# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 25-1003**

**September Term, 2025**

FILED ON: AUGUST 4, 2026

HEROES TECHNOLOGY (US) LLC
D/B/A SNUGGLE ME ORGANIC,
                PETITIONER

v.

CONSUMER PRODUCT SAFETY COMMISSION,
                RESPONDENT

---

On Petition for Review of a Final Decision
of the Consumer Product Safety Commission

---

Before: SRINIVASAN, *Chief Judge*, and WILKINS and RAO, *Circuit Judges*.

## J U D G M E N T

The case was considered on the record compiled before the Consumer Product Safety Commission, and on the briefs and oral argument of the parties. The Court has afforded the issues full consideration and determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is hereby:

**ORDERED** and **ADJUDGED** that the petition for review be **DENIED**.

\*     \*     \*

The agency action before us is a Final Rule that Respondent, Consumer Product Safety Commission ("CPSC" or "Commission"), issued to manufacturers, distributors, and retailers of infant support cushions. Safety Standard for Infant Support Cushions, 89 Fed. Reg. 87467 (Nov. 4, 2024). The Final Rule newly designates infant support cushions as "durable infant or toddler products," and imposes a mandatory standard establishing "performance, testing, labeling, and instructional literature requirements" on regulated entities to ensure safe uses of these products. *Id.* at 87468.

Petitioner, Heroes Technology ("Heroes"), designs, manufactures, and sells Snuggle Me infant loungers, which are regulated by the Final Rule at issue in this case. The Snuggle Me infant lounger is "intended for use for infants up to 1 year," *see* Petitioner's Br. at 35, and incorporates

several design features, including four-inch-high side walls along with an "unpadded, suspended center sling" that work together to "gently hold a baby in the supine position" and "creat[e] the sensation of being hugged." *See* J.A. 431–32, J.A. 435.

Heroes contends that the Final Rule should be vacated because it exceeds CPSC's statutory authority under Section 104 of the Consumer Product Safety Improvement Act of 2008, codified at 15 U.S.C. § 2056a, and is arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), as it is not reasonably explained and is unmoored from the factual record before the agency. CPSC counters that the Final Rule was consonant with its statutory authority, reasoned, and supported by substantial evidence.

For the reasons explained herein, we hold that the Final Rule fell within the scope of CPSC's statutory authority and was neither arbitrary nor capricious.

## I.

Congress passed the Consumer Product Safety Act ("CPSA") in 1972 to "protect the public against unreasonable risks of injury associated with consumer products[.]" 15 U.S.C. § 2051(b)(1). The CPSA established CPSC and conferred authority upon the agency to promulgate consumer safety standards to ensure consumers' well-being. *Id.* §§ 2051, 2053(a), 2056(a). Thirty-six years later, Congress amended the CPSA in the Consumer Product Safety Improvement Act of 2008 ("CPSIA") and furnished CPSC with a suite of regulatory and enforcement tools to, among other things, evaluate "the effectiveness of any voluntary consumer product safety standards for durable infant or toddler products" and in instances where they fall short, issue "more stringent" mandatory standards to "further reduce the risk of injury associated with such products." *Id.* § 2056a(b)(1). These standards apply to a diverse array of twelve "durable infant or toddler product[s]" preidentified by Congress. *Id.* § 2056a(f)(2).

CPSC leveraged its statutory authority to address safety concerns tied to infant support cushions. To that end, CPSC published a notice of proposed rulemaking on January 16, 2024, and conveyed its intention to designate infant support cushions as "durable infant or toddler products" subject to Section 2056a's "more stringent" procedural requirements. Safety Standard for Infant Support Cushions, 89 Fed. Reg. 2530 (Jan. 16, 2024). The proposed change was prompted by an analysis of nearly twelve years of historical data involving at least 79 infant fatalities and more than 100 nonfatal incidents or reports associated with infant support cushions, and if fully pursued, would result in mandatory performance and labeling requirements for these products. *Id.* Following the close of the notice-and-comment period, CPSC issued its Final Rule consistent with the proposed rule and without significant modification. 89 Fed. Reg. at 87467–69. No voluntary standards existed for infant support cushions at the time the Final Rule was promulgated. *Id.* at 87480.

Heroes seeks judicial review of the Final Rule. We have jurisdiction under 15 U.S.C. § 2056a(b)(3).

## II.

Petitioner's principal contention is that the Final Rule exceeds CPSC's statutory authority under Section 2056a. Heroes asserts that infant support cushions are not durable infant or toddler products because they serve purposes functionally distinct from—and bearing no resemblance to—those products enumerated under the statute. To bolster that claim, Heroes undertakes extensive parsing of the statute's terms to demonstrate infant support cushions' dissimilarity to those already catalogued under Section 2056a(f)(2). But we are unpersuaded.

## A.

We review issues of statutory interpretation under the APA de novo. *See Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 261 (D.C. Cir. 2025). Our starting point is grounded in "the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Albertini*, 472 U.S. 675, 680 (1985) (citation modified). Applying "the traditional tools of statutory construction," *Kimball Wind, LLC v. Fed. Energy Regul. Comm'n*, 140 F.4th 496, 499 (D.C. Cir. 2025) (citation modified), we "exercise independent judgment" to determine the "single, best meaning" of a disputed statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 400 (2024). It should not be overlooked that "[s]tatutory construction … is a holistic endeavor," *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988), and that the entire statute must be considered as a whole so as "not to give undue effect to particular words or clauses[.]" *Costanzo v. Tillinghast*, 287 U.S. 341, 345 (1932) (citation omitted).

Petitioner's statutory authority argument rests on a single proposition: the Final Rule only survives if infant support cushions qualify as "durable products." Heroes offers several dictionary definitions to extract a favorable meaning of the term that would justify infant support cushions' exclusion from Section 2056a's focus on "durable infant or toddler products." Those efforts prove unavailing.

Our inquiry begins with the statutory text. Section 2056a does not define the term "durable product." Lacking a statutory definition, "we turn to the phrase's plain meaning at the time of enactment." *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020); *see also Fed. Commc'ns Comm'n v. AT & T Inc.*, 562 U.S. 397, 403 (2011) ("When a statute does not define a term, we typically give the phrase its ordinary meaning.") (citation modified). As commonly used, "durable" means "able to exist for a long time without significant deterioration," *see Durable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (2009), and "product" means "something (as a service) that is marketed or sold as a commodity." *Id.* at *Product*. Construed together, all Congress intended to convey when it referred to a "durable product" in Section 2056a was that the product could survive extended use without significant wear, damage, or decline. The plain text of the statute does not identify any additional criteria to consider when assessing whether a product should be regarded as "durable." Applying this understanding, infant support cushions qualify as a "durable product": they are designed to hold an infant in a supported position and are frequently reused across multiple children, giving them a useful life of several years. J.A. 609.

3

Heroes also insists that infant support cushions are more fittingly characterized as textiles—which are commonly understood to be nondurable products—and invites this Court to focus on the product's material composition as the touchstone for that classification. We decline.

Petitioner fails to adduce any express language in Section 2056a that conditions the classification of "durable infant or toddler products" based on their material composition. Nor does Section 2056a impose any obligation on CPSC to march through a prescribed series of steps, which according to Heroes, would require the agency to consult the listed "durable infant or toddler product[s]" already listed under Section 2056a(f)(2), compare unlisted products against that list, and only thereafter designate unlisted products as a "durable infant or toddler product." In our view, Section 2056a targets not material composition, but rather function, which here bears on the product's properties, how it is used and for what purpose, and whether safety standards can safeguard risks associated with those uses. Our conclusion that Section 2056a(f) is concerned with function follows from the statutory text, which states that a "durable infant or toddler product" is "a durable product intended for use, or that may be reasonably expected to be used, by children under the age of 5 years." 15 U.S.C. § 2056a(f)(1). In fact, the listed products—cribs, high chairs, play yards, strollers, bassinets, and toddler beds—are constructed from varying materials but are similar in their function: they support, restrain, or contain an infant or toddler during sustained use over time. Infant support cushions also fit that description.

The canon of *noscitur a sociis*—that a term "is known by the company it keeps," *Yates v. United States*, 574 U.S. 528, 543 (2015)—confirms what the plain text already suggests. The products Congress enumerated—cribs, high chairs, play yards, strollers, bassinets, and toddler beds—share two characteristics: they are designed to support, restrain, or contain an infant or toddler, and they are built to withstand sustained use over time, often for multiple children. Infant support cushions share both features. Like a bassinet or crib, an infant support cushion is designed to hold an infant in a supported position. And as the record reflects, these cushions are frequently reused among multiple children, giving them a useful life of several years. *See* J.A. 609. The listed products thus illuminate rather than foreclose the conclusion that infant support cushions are durable—they are precisely the kind of product Congress had in mind.

Even if the plain meaning of "durable product" in Section 2056a(f) was not determinative of CPSC's statutory authority, the statute's use of the term "includes" indicates that the twelve "durable infant or toddler product[s]" enumerated by Congress was not meant to be exhaustive. The list was meant to highlight examples of "durable infant or toddler product[s]," rather than present a closed list of them. *See Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) ("The word 'includes' is usually a term of enlargement, and not of limitation.") (citation modified); *see also Dong v. Smithsonian Inst.*, 125 F.3d 877, 880 (D.C. Cir. 1997) ("We recognize, of course, that the word 'includes' normally does not introduce an exhaustive list but merely sets out examples of some 'general principle.'") (citation omitted). To read the statute otherwise would undermine the significance of promulgating safety standards that keep pace with a rapidly changing marketplace and contravene CPSC's statutory charge "to protect the public against unreasonable risks of injury associated with consumer products," "assist consumers in evaluating the comparative safety of consumer products," "develop uniform safety standards for consumer

4

products," and "promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries." 15 U.S.C. § 2051(b).

In sum, we conclude that CPSC did not exceed its statutory authority when designating infant support cushions "durable infant or toddler products."

**B.**

Having determined that Section 2056a does not preclude CPSC from exercising its authority to designate infant support cushions "durable infant or toddler products," we consider next whether the Final Rule was arbitrary and capricious.

A reviewing court must "hold unlawful and set aside final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Radio Commc'ns Corp. v. Fed. Commc'ns Comm'n*, 141 F.4th 243, 248 (D.C. Cir. 2025) (quoting 5 U.S.C. § 706(2)(A)). Our review is both deferential and narrow: to determine whether an administrative rule is arbitrary and capricious, we ask whether CPSC "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation modified). The party challenging a final agency action bears the burden of proving that the decision was arbitrary and capricious. *Pierce v. Sec. & Exch. Comm'n*, 786 F.3d 1027, 1035 (D.C. Cir. 2015).

Heroes contends that CPSC engaged in arbitrary and capricious rulemaking by failing to consider whether previously issued regulations aimed at infant sleep products might have addressed the agency's concerns with infant support cushions. *See* Safety Standard for Infant Sleep Products, 86 Fed. Reg. 33022 (Jun. 23, 2021).

But infant support cushions are not coextensive with the broader infant sleep product category. These products are functionally different and present their own array of characteristics that depend on their own usage patterns. CPSC clarified as much when similar comments were raised during the rulemaking process. The agency explained two points on that front: first, that "[t]he scope of [the Final Rule] includes products that are not subject to the infant sleep products rule, but that still present a risk of injury or death to infants," and second, "[i]nfant support cushions do not meet the definition of infant sleep products because they are not marketed or intended to provide sleeping accommodations." 89 Fed. Reg. at 87471. Those reasons "cogently explain why [CPSC] … exercised its discretion," *see State Farm*, 463 U.S. at 48–49, and chose to address safety concerns associated with infant support cushions through the Final Rule. The requirement precluding arbitrary and capricious agency action simply demands that "the agency adequately explain its result and respond to relevant and significant public comments." *Public Citizen, Inc., v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (citation modified). So it is the case here.

That said, reasoned decision-making calls for the agency to consider important aspects of the problem, "examine the relevant data[,] and articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. And here, CPSC did so accordingly.

5

To start, CPSC construed Section 2056a as requiring it to "examine and assess the effectiveness of voluntary consumer product safety standards for durable infant or toddler products" and "promulgate standards for all categories of durable infant or toddler products until the Commission has promulgated standards for all such product categories." 89 Fed. Reg. at 87467. CPSC recognized a continuing concern involving infant support cushions that led to "at least 79 reported fatalities … from January 1, 2010, through December 31, 2022, as well as 124 nonfatal incidents or reports involving these products within the same time period." *Id.*

The Commission then scrutinized recent data, identifying that infant support cushions were involved in "17 deaths in 2020, and a minimum of 17 more in 2021," "[m]ore than 80 percent of the known fatalities associated with these products involve infants three months old or younger," and "[i]n more than 60 percent of the fatalities, the official cause of death was asphyxia or probable asphyxia." *Id.* As required by the statute, CPSC "consulted with manufacturers, retailers, trade organizations, laboratories, consumer advocacy groups, consultants, and the public" to develop the Final Rule and acknowledged that until it was promulgated, "no voluntary or mandatory safety standard for infant support cushions exist[ed] to address the hazards posed by" infant support cushions. *Id.* at 87467–68.

Before pressing on, the Commission considered several alternatives short of a mandatory standard. For instance, CPSC "considered using a public education campaign that would result in no regulatory impact on small businesses" but decided not to move forward with that approach "given the education campaigns on safe sleep practices that CPSC and others have been undertaking for years" had "little to no mitigation of the current rates of deaths and injuries from infant support cushions." *Id.* at 87486. The Commission further contemplated "allowing the voluntary standards process additional time to develop a voluntary standard to address the hazards posed by infant support cushions" but resolved not to take that course of action because of the "[un]certainty that such a voluntary standard would be adopted, and [because] a potential voluntary standard, if published, may not adequately address the identified hazards to infants." *Id.* This is what reasoned decision-making should look like. *See State Farm*, 463 U.S. at 42.

Heroes's final argument is that the Final Rule was arbitrary and capricious because CPSC failed to account for the full universe of factors contributing to hazards posed by infant support cushions. True, an agency must consider "significant and viable and obvious alternatives" but it "is not required to consider all policy alternatives, or every alternative device and thought conceivable by the mind of man." *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 943–944 (D.C. Cir. 2021) (citation modified). Consideration of empirical data at the level of granularity Heroes suggests, *see* Petitioner's Br. at 53–55, is simply not required under Section 2056a. *See Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022). Besides, "[t]he APA imposes no general obligation on agencies to produce empirical evidence"; it suffices that the agency has "justif[ied] its rule with a reasoned explanation." *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009). CPSC has met that standard.

All told, the agency identified multiple safety concerns pertaining to infant support cushions, undertook the requisite analyses to inform its concerns, and ultimately promulgated a rule pursuant

to its statutory authority that would effectively remedy these issues. The Final Rule was thus not arbitrary and capricious.

*   *   *   *

For the foregoing reasons, we deny Heroes's petition for review. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk